UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

————————————

№ 24-cv-7286 (RER) (JRC)

————————————

YURY GOKHBERG AND TATYANA GAVRIKOVA

VERSUS

CAPITAL ONE, N.A., *ET AL.*

————————————

**MEMORANDUM & ORDER**

————————————

**RAMÓN E. REYES, JR., District Judge:**

*Pro se* plaintiffs Yury Gokhberg and Tatyana Gavrikova (together "Plaintiffs"), bring this action against Defendant Capital One, N.A. ("Capital One" or "Defendant") and John Does 1-5, arising from Capital One's handling of lender-placed insurance proceeds following fire damage to Plaintiffs' property. (ECF Nos. 1, 8). Plaintiffs assert seven causes of action: conversion, breach of contract, quiet title, declaratory judgment, unjust enrichment, fraudulent concealment, and violation of the Truth in Lending Act ("TILA"). (ECF No. 8). Before the Court are Defendant's motion to dismiss (ECF No. 9), Plaintiffs' motion for summary judgment (ECF No. 23) and Defendant's cross-motion for summary judgment (ECF No. 25). For the reasons set forth below, Defendant's cross-motion for summary judgment is granted as to all claims, and Plaintiffs' motion for summary judgment is denied. Defendant's motion to dismiss is denied as moot.

## BACKGROUND

I.       Undisputed Facts[1]

The subject real property located in Brooklyn, New York (the "Property") was deeded to Plaintiffs on or about March 16, 1994. (ECF No. 25-6 ¶ 1; ECF No. 28-1 ¶ 1). A mortgage was executed on the Property and the original principal balance is undisputed. (ECF No. 28-1 ¶ 2).

The mortgage contains an insurance proceeds clause providing, in relevant part, that insurance proceeds "will be used to repair or to restore the damaged Property" unless "it is not economically feasible to make the repairs or restoration" or "the use of the proceeds for that purpose would lessen the protection given to Lender by this Security Instrument." (ECF No. 25-6 ¶ 4). If repair or restoration is not economically feasible or would lessen the lender's protection, "the proceeds will be used to reduce the amount that [Borrower] owe[s] to Lender under the Note and under this Security Instrument." (*Id.*) The clause further provides: "If any of the proceeds remain after the amount that [Borrower] owe[s] to Lender has been paid in full, the remaining proceeds will be paid to [Borrower]." (*Id.*)

Over the following years, the note and mortgage were assigned through a chain of entities. The parties agree that servicing of the note was transferred to Countrywide/BAC in 2008 (ECF No. 28-1 ¶ 6), that an assignment to Greenpoint Mortgage Funding, Inc.

---

[1] The following facts are drawn from the parties' respective Local Civil Rule 56.1 Statements and responses thereto and are undisputed unless otherwise noted. (*See* ECF No. 25-6; ECF No. 28-1). *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003).

("GPM") was recorded in 2010 (*id.*), that a notice of intent to accelerate issued in May 2011 (*id.*), and that servicing was transferred to Capital One in late-2011 (*id.*). Default and collection notices were issued in January 2009. (*Id.*)

In April 2012, the Property sustained fire damage, and a lender-placed insurance claim was made. (ECF No. 25-6 ¶ 1; ECF No. 28-1 ¶ 12). It is undisputed that Capital One maintained lender-placed insurance on the Property and received insurance proceeds totaling approximately $57,500 in June 2012 (the "Insurance Proceeds"). (ECF No. 25-6 ¶ 2). Two checks were made payable to "Capital One, N.A., for the account of" Plaintiffs. (ECF No. 28-1 ¶ 14). Repair estimates exceeded the policy limit. (*Id.* ¶ 15). On or about October 29, 2012, Superstorm Sandy struck the area, causing additional damage to the Property. (ECF No. 25-6 ¶ 1; ECF No. 28-1 ¶ 24). The insurer denied the Sandy damage claim. (ECF No. 28-1 ¶ 24).

Between 2012 and 2016, Plaintiffs and Capital One continuously exchanged property repair documentation and estimates. (*Id.* ¶¶ 25–26). During this period, Plaintiffs contracted with and authorized payment to a contractor in June and July 2012. (*Id*. ¶¶ 18–19). A series of related events followed in early 2013: a $2,199.06 lien was paid, New York City issued a demolition/restore letter, the contractor sent a January 22 emergency repair request, and Plaintiffs faxed a $10,000 draw request. (*Id.* ¶¶ 22, 27–29). On September 6, 2013, Capital One notified Plaintiffs it was holding $36,561.75 in a restricted escrow account, prompting Plaintiffs to request that those funds be directed to the contractor. (*Id.* ¶¶ 32, 34). Capital One's internal records show communications regarding

3

the insurance proceeds ceased in December 2016, and the insurer closed the claim on February 16, 2017. (*Id.* ¶¶ 36–37).

In July 2013, Capital One commenced a foreclosure action against Plaintiffs in New York State Supreme Court (the "Foreclosure Action"). (ECF No. 25-6 ¶ 5; ECF No. 28-1 ¶ 31). Servicing was transferred to Rushmore in late 2017. (ECF No. 28-1 ¶ 39). Capital One assigned the mortgage to Wilmington Savings Fund Society, FSB, as Trustee of Stanwich Mortgage Loan Trust A, in late December 2018; the assignment was recorded on July 7, 2021. (ECF No. 25-6 ¶ 6; ECF No. 28-1 ¶ 45). An additional assignment dated April 5, 2021 was recorded on July 16, 2021. (ECF No. 25-6 ¶ 6; ECF No. 28-1 ¶ 46).

The Foreclosure Action was discontinued on April 8, 2024. (ECF No. 25-6 ¶ 7; ECF No. 28-1 ¶ 47). A satisfaction of mortgage is dated July 28, 2025 and was recorded on August 8, 2025 (CRFN 2025000213506). (ECF No. 28-1 ¶ 48).

II.    Procedural Background

On October 16, 2024, Plaintiffs commenced this action against Capital One. (ECF No. 1). Plaintiffs subsequently filed an amended complaint asserting seven causes of action: (1) conversion; (2) breach of contract; (3) quiet title under N.Y. RPAPL § 1501; (4) declaratory judgment; (5) unjust enrichment; (6) fraudulent concealment; and (7) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641(g). (ECF No. 8).

Defendant moved to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 9). Plaintiffs opposed (ECF No. 10) and Defendant replied (ECF No. 13). Plaintiffs subsequently filed a motion for summary judgment on those

4

claims. (ECF No. 23). Defendant cross-moved for summary judgment and submitted a Local Civil Rule 56.1 Statement of Undisputed Material Facts. (ECF No. 25-7; ECF No. 25-5). Plaintiffs opposed the cross-motion (ECF No. 28) and Defendant replied (ECF No. 29). Because the parties have fully briefed cross-motions for summary judgment on a developed record, the Court resolves all claims under the summary judgment standard of Federal Rule of Civil Procedure 56 and denies Defendant's earlier motion to dismiss as moot.

## **LEGAL STANDARD**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (citation omitted); *see also Kee v. City of New York*, 12 F.4th 150, 157 (2d Cir. 2021).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party "may not rely on mere conclusory

5

allegations [or unsubstantiated] speculation" but must offer "some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).

Where cross-motions for summary judgment are filed, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

Because Plaintiffs proceed *pro se*, the Court construes their submissions liberally, reading them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*). Nevertheless, *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). A party opposing summary judgment "must offer some hard evidence showing that [their] version of the events is not wholly fanciful." *Fed. Trade Comm'n v. RCG Advances, LLC*, 695 F. Supp. 3d 368, 382 (S.D.N.Y. 2023) (citing *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005)). "It is well settled that Plaintiff 'may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible.'" *Loccenitt v. City of New York,* No. 10 Civ. 8319 (JPO), 2012 WL 5278553, at *4 (S.D.N.Y. Oct. 22, 2012) (citing *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir.1993)).

6

**DISCUSSION**

For the reasons that follow, Defendant's cross-motion for summary judgment is granted as to all claims, and Plaintiffs' motion for summary judgment is denied.

I.    Summary Judgment is Granted on the Insurance Proceeds Claims

The Court first addresses Plaintiffs' claims for breach of contract, conversion, and unjust enrichment. Because all three claims arise from Capital One's receipt and handling of the 2012 lender-placed insurance proceeds, they share a common factual nexus. For the reasons discussed below, Defendant is entitled to summary judgment on all three claims.

A.  Undisputed Facts

Section 5 of the Mortgage provides a conditional, three-tiered framework for the application of insurance proceeds.

First, proceeds "will be used to repair or to restore the damaged Property"—but only if restoration is "economically feasible" and "the use of the proceeds for that purpose would [not] lessen the protection given to Lender by this Security Instrument." (ECF No. 25-6 ¶ 4). Second, if repair or restoration is not economically feasible or would lessen the lender's security, "the proceeds will be used to reduce the amount that [Borrower] owe[s] to Lender under the Note and under this Security Instrument." (*Id.*) Third, and critically: "If any of the proceeds remain after the amount that [Borrower] owe[s] to Lender has been paid in full, the remaining proceeds will be paid to [Borrower]." (*Id.*) Under this structure, Plaintiffs were entitled to a "surplus" remittance only after their outstanding debt was paid in full—a condition that was never satisfied.

7

The record establishes that at no point during Capital One's handling of the Insurance Proceeds did a "surplus" exist that Capital One was obligated to remit to Plaintiffs. Plaintiffs admitted the original principal balance of the loan. (ECF No. 28-1 ¶ 2). Whether that balance was $73,600 or $60,000, it exceeds the $36,561.75 that remained in the Reserve/Escrow Account — meaning that the original principal, standing alone and without any accrued interest or other charges, was greater than the total remaining Insurance Proceeds. Plaintiffs further admitted that default and collection notices were issued in January 2009. (*Id.* ¶ 8). The record reflects that the Loan was in default status when Capital One received the Insurance Proceeds in June 2012: lender-placed insurance was in effect by April 2012 (*id.* ¶ 12), and Capital One commenced foreclosure in July 2013 (*id.* ¶ 31). During default, the outstanding balance does not decrease — interest continues to accrue, and the lender advances escrow payments for property taxes and insurance that are added to the debt. Capital One's records reflect that, as of April 2017, Plaintiffs' total payoff balance — even after crediting the $36,561.75 remaining in the Reserve/Escrow Account — was approximately $97,000. (ECF No. 25-7 at 8–9). Plaintiffs deny the total amount due. (ECF No. 28-1 ¶ 21). However, Plaintiffs have never claimed in any filing that their outstanding debt was at or below $36,561.75, nor have they produced any competing account statement, payoff figure, or calculation to contradict Capital One's records. The Court is mindful that *pro se* submissions "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006). Even so, a nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v.*

8

*Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). And "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). On this record, no genuine dispute exists as to the fact that the outstanding debt substantially exceeded the $36,561.75 in remaining Insurance Proceeds.

Plaintiffs contend that Capital One's own Rule 56.1 admissions establish liability because Capital One conceded that $36,561.75 remained in the restricted escrow account through at least February 2017 and was never "applied" or "remitted." (ECF No. 27-2 at 2). But this argument conflates the fact of retention with a breach. Under the loan and mortgage, Capital One was contractually authorized to hold Insurance Proceeds pending completion of repairs. (ECF No. 25-6 ¶ 4). The mere fact that funds remained in the Reserve/Escrow Account does not establish a breach; rather, it reflects that the conditions precedent for release—either completion of restoration or full satisfaction of the debt—were never met. *See Contant v. AMA Cap., LLC,* 66 F.4th 59, 66 (2d Cir. 2023) ("When 'a written agreement . . . is complete, clear[,] and unambiguous on its face,' we must enforce the agreement 'according to the plain meaning of its terms.'")

The undisputed record further establishes that Plaintiffs failed to satisfy the conditions under the first tier of Section 5 that would have obligated Capital One to release the remaining proceeds for restoration. Between September 2012 and December 2016,

Capital One repeatedly contacted Plaintiffs to obtain documentation of completed repairs. (ECF No. 28-1 ¶ 25). Plaintiffs never completed the repairs and never provided the required documentation. (ECF No. 25-5 at 4). Critically, on or about October 29, 2012—just months after the fire and before the initial repairs were finished—Superstorm Sandy struck the area and caused additional catastrophic damage to the Property. (ECF No. 28-1 ¶ 24). The insurer denied the Sandy claim. (*Id.*) This intervening catastrophe rendered the original repair proposal moot and made full restoration of the Property economically infeasible. There can be no dispute about that.

### B. Breach of Contract

To prevail on a breach of contract claim under New York law, a plaintiff must establish "(1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011). Capital One is entitled to summary judgment because the undisputed record establishes that Capital One did not breach the Mortgage's insurance proceeds clause.

The Court addresses Plaintiffs' central contention that, once restoration became infeasible after Superstorm Sandy, section 5's second tier required Capital One to apply the remaining $36,561.75 to reduce the outstanding debt. (ECF No. 28 at 6). Even accepting this reading of the note and mortgage's conditional structure, the argument does not establish a breach resulting in cognizable damages. As set forth above, the outstanding loan balance substantially exceeded the Insurance Proceeds at all relevant

times. *See supra* Part I.A. Moreover, the record reflects that the question of whether restoration was definitively infeasible remained unresolved during much of the relevant period: Capital One continued requesting repair documentation through December 2016 (ECF No. 28-1 ¶ 25), and Plaintiffs themselves continued to seek disbursements for repair work (*id.* ¶¶ 26–27), suggesting that both parties treated restoration as an ongoing possibility. Under these circumstances, Capital One's continued retention of the funds in escrow pending resolution of the restoration question was consistent with the first tier of section 5. Even if the second tier was triggered at some point, the failure to apply the Insurance Proceeds to the outstanding balance would, at most, give rise to a claim for the interest differential—*i.e.*, the additional interest that accrued on the unreduced portion of the debt. But Plaintiffs have produced no evidence or calculation of any such differential, and the Court cannot speculate as to that amount. Accordingly, even under Plaintiffs' reading of section 5, the breach of contract claim cannot survive summary judgment.

Under these circumstances, Capital One's handling of the Insurance Proceeds was consistent with the note and mortgage. Capital One disbursed funds toward repairs as work progressed. Defendant's records reflect a disbursement of $18,611.67 toward the contractor in August 2012. (ECF No. 25-5 at 4). Plaintiffs dispute this specific disbursement amount, but it is undisputed that Plaintiffs authorized payment to the contractor in July 2012 and that $2,199.06 was paid toward a JFD lien in January 2013. (ECF No. 28-1 ¶ 22). Capital One's September 2013 letter confirms that $36,561.75 remained in the restricted escrow account (*id.* ¶ 32), and the precise amount of the earlier disbursements does not affect the analysis because, as noted above, the outstanding

11

debt exceeded the total Insurance Proceeds under any accounting. Capital One retained the remainder pending completion of repairs and continued to request documentation through December 2016. (*Id.* ¶¶ 25, 36). Plaintiffs have not identified any specific contractual obligation that Capital One violated or any point at which Capital One was required to release the remaining funds despite Plaintiffs' failure to complete restoration and the continued existence of an outstanding debt exceeding the proceeds.

C. <u>Conversion</u>

Plaintiffs' conversion claim arises from the same Insurance Proceeds at issue in the breach of contract claim. Capital One received approximately $57,500 in lender-placed insurance proceeds in June 2012, disbursed approximately $20,810.73, and retained $36,561.75 in a restricted escrow account. (ECF No. 25-6 ¶ 2; ECF No. 28-1 ¶ 32). Capital One's September 6, 2013 letter listed options for handling the funds in the restricted escrow account. (ECF No. 28-1 ¶ 33). In September 2018, Capital One sold the note and assigned the mortgage—along with any remaining Insurance Proceeds—to a third-party. (ECF No. 25-5 at 5).

Plaintiffs' conversion claim fails on the merits. As an initial matter, the claim is duplicative of the breach of contract claim. "[A] claim to recover damages for conversion cannot be predicated on a mere breach of contract." *Karmilowicz v. Hartford Fin. Servs. Grp.,Inc.,* 494 F. App'x 153, 158 (2d Cir. 2012) (quoting *Wolf v. Nat'l Council of Young Israel*, 264 A.D.2d 416, 417 (2d Dep't 1999)); *see also Giugliano v. FS2 Cap. Partners, LLC*, No. 14-CV-7240 (ADS)(GRB), 2015 WL 5124796, at *16 (E.D.N.Y. Sept. 1, 2015) (collecting cases and holding that claims for conversion and unjust enrichment "cannot

lie [where] they are duplicative of [a] breach of contract cause of action").The Insurance Proceeds were transferred to Capital One pursuant to the note and mortgage, and Capital One's handling of those proceeds was governed by section 5 of the mortgage. (ECF No. 25-6 ¶ 4). Because the allegedly converted property was received and held under the terms of an express contract, the conversion claim cannot stand independently.

Even if the conversion claim were not duplicative, it would independently fail because Capital One was contractually authorized to hold the Insurance Proceeds. Under New York law, "[w]here the original possession [of the chattel] is lawful, a conversion does not occur until the defendant refuses to return [the chattel] after demand or until [the defendant] sooner disposes of [the chattel]." *Skyline Risk Mgmt., Inc. v. Legakis,* 733 F. Supp. 3d 316, 326 (S.D.N.Y. 2024) (citing *Thyroff v. Nationwide Mut. Ins. Co.*, 360 F. App'x 179, 180 (2d Cir. 2010)). Where a party receives and holds property pursuant to an express contractual right, there is no "unauthorized dominion" and conversion does not lie. *See Fesseha v. TD Waterhouse Inv. Servs., Inc.*, 305 A.D.2d 268, 268 (1st Dep't 2003) (no conversion where defendant held property pursuant to contractual right); *Republic of Haiti v. Duvalier*, 211 A.D.2d 379, 384 (1st Dep't 1995) ("An action for conversion cannot be validly maintained where . . . the defendant is authorized by agreement . . . to use the property."). Here, Section 5 of the Mortgage expressly authorized Capital One to receive, hold, and apply insurance proceeds. Capital One's possession and handling of the Insurance Proceeds was at all times consistent with the terms of the Mortgage. Because Capital One's possession was lawful under the contract, Plaintiffs cannot establish the "unauthorized dominion" required to sustain a conversion

13

claim. *See Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir. 2006) (conversion requires "unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights"). Moreover, the outstanding loan balance always exceeded the Insurance Proceeds, meaning Plaintiffs never had a superior possessory right to the funds. *See supra* Part I.A. Under the mortgage's three-tiered proceeds clause, Plaintiffs were entitled to a remittance only after their debt was paid in full—a condition that was never satisfied.

D. Unjust Enrichment

Plaintiffs' unjust enrichment claim arises from the same Insurance Proceeds and the same course of conduct described in Part I.A.

Plaintiffs' unjust enrichment claim fails on the merits because it is duplicative of the breach of contract claim. Under New York law, "an unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract . . . claim." *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 388 (1987); *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012) ("[u]njust enrichment is not a catchall cause of action to be used when others fail" and "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff"). Here, the mortgage is a valid and enforceable contract that expressly governs the application of insurance proceeds under section 5. Neither party disputes the existence or enforceability of the mortgage. Because the mortgage covers the same subject matter as Plaintiffs' unjust enrichment claim, that claim "does nothing more than duplicate" the breach of

14

contract claim and cannot survive summary judgment. *See Goldberg v. Pace Univ.*, 535 F. Supp. 3d 180, 201 (S.D.N.Y. 2021), *aff'd*, 88 F.4th 204 (2d Cir. 2023) (dismissing unjust enrichment as duplicative where "there is no dispute that a valid contract exists"); *Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 509 (S.D.N.Y. 2018) (same).

Plaintiffs argue that their unjust enrichment claim should survive as an alternative pleading because "the adequacy or performance of the contract remedy is genuinely disputed." (ECF No. 28 at 9). This argument is unavailing. While alternative pleading is permitted at the complaint stage where the existence or enforceability of a contract is genuinely in dispute, that rationale has no application at summary judgment. *See Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 54 (2d Cir. 2011) (unjust enrichment is not duplicative only where "there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue"); *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142 (2009). Plaintiffs identify no basis on which the mortgage might be found unenforceable. Because the undisputed record establishes a valid contract covering the same subject matter, there is no genuine dispute warranting alternative pleading, and the unjust enrichment claim fails as duplicative. *See Clark-Fitzpatrick*, 70 N.Y.2d at 388.

E. Statute of Limitations

As an independent and alternative basis for summary judgment on the breach of contract, conversion, and unjust enrichment claims, each claim is also time-barred.

Under New York law, a breach of contract claim is governed by a six-year statute of limitations, CPLR § 213(2), and "accrues at the time of the breach." *Ely-Cruikshank Co.*

15

*v. Bank of Montreal*, 81 N.Y.2d 399, 402 (1993). Capital One's obligations under section 5 were triggered when it received the Insurance Proceeds in June 2012. (ECF No. 25-6 ¶ 4). Even assuming the breach did not occur until the earliest point at which application to the debt was required—which, under Plaintiffs' theory, could have been as late as February 2017 when Capital One closed the insurance claim (ECF No. 28-1 ¶ 37)—the claim is still time-barred. A February 2017 accrual date, plus the six-year limitations period, plus the 228-day COVID-19 toll, yields an extended deadline of approximately October 2023—one year before the October 2024 filing.[2] At the earliest, the claim accrued no later than June 2012 when Capital One received the proceeds and its obligations were triggered, and the six-year limitations period expired in June 2018.

Each monthly or yearly failure to apply the proceeds is not a fresh breach; rather, it is the ongoing consequence of Capital One's initial decision to hold the funds in escrow. *See Henry v. Bank of Am.*, 147 A.D.3d 599, 601 (1st Dep't 2017). Nor does the September 2018 loan sale restart the limitations period; it was a commercial disposition of the Mortgage and servicing rights—a transaction of a fundamentally different character than the failure to apply insurance proceeds. *See V.E.C. Corp. of Del. v. Hilliard*, 896 F. Supp. 2d 253, 261 (S.D.N.Y. 2012). At the very latest, any breach was definitive by February 2017, when Capital One closed the insurance claim with $36,561.75 still unapplied. (ECF No. 28-1 ¶ 37).

---

[2] Executive Order 202.8 tolled limitations periods from March 20, 2020 through November 3, 2020—228 days—but cannot revive claims that had already expired. *Zappin v. Cooper*, No. 23-671, 2024 WL 3250475, at *2 (2d Cir. July 1, 2024).

The conversion claim is also time-barred. Under New York law, a conversion claim is subject to a three-year statute of limitations. CPLR § 214(3). The Court has considered Plaintiffs' argument that, under the demand-and-refusal rule, the claim did not accrue until Plaintiffs made a demand that was refused. *See Vigilant Ins. Co. of Am. v. Hous. Auth. of El Paso, Tex.*, 87 N.Y.2d 36, 44 (1995). Even under this rule, however, a demand is unnecessary for accrual where the alleged converter "openly deals with the property as [its] own" or where demand would be futile. *Wallace Wood Props., LLC v. Wood*, 669 F. App'x 33, 36 (2d Cir. 2016). Here, Capital One exercised dominion over the Insurance Proceeds by retaining them in a restricted escrow account, refusing to apply them to Plaintiffs' debt or return them as surplus, transferred the servicing of the loan to a third party, and notified Plaintiffs in November 2017. (ECF No. 28-1 ¶ 39). Capital One's September 2013 letter, in which it listed options for handling the escrowed funds and indicated the conditions under which they might be released, constituted at the latest an open assertion of dominion inconsistent with Plaintiffs' claims, triggering accrual no later than September 2013. (*Id.* ¶¶ 32–33). The three-year limitations period therefore expired by 2016 at the latest. Even under the most generous accrual date of February 2017—when Capital One closed the insurance claim—the three-year period expired in February 2020. With the 228-day COVID-19 toll, the extended deadline reached approximately October 2020—still four years before the October 2024 filing. The conversion claim is therefore time-barred under any accrual theory.

The unjust enrichment claim is also time-barred. Under New York law, an unjust enrichment claim is governed by a six-year statute of limitations. CPLR § 213(1); *Corsello*,

17

18 N.Y.3d at 790. For the reasons set forth above, the claims arising from Capital One's handling of the Insurance Proceeds accrued no later than June 2012, when Capital One received the proceeds and its obligations under section 5 of the mortgage were triggered. The six-year limitations period therefore expired no later than June 2018—more than six years before the October 2024 filing. Plaintiffs' suggestion that the September 2018 loan sale created a new accrual date for unjust enrichment fails for the same reason it fails for breach of contract: the loan sale was a commercial disposition of the note and mortgage and servicing rights—a transaction of a fundamentally different character than the alleged failure to apply insurance proceeds. (ECF No. 28 at 4). The unjust enrichment claim is therefore time-barred.

The Court also rejects Plaintiffs' equitable estoppel argument. (*Id*. at 5). Equitable estoppel requires "some conduct on the part of the defendant after the initial wrongdoing; mere silence or failure to disclose the wrongdoing is insufficient." *Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 491 (2007). Plaintiffs had inquiry notice no later than 2013: they knew Capital One received the proceeds, knew the exact amount, and were engaged in active communications regarding repairs. (ECF No. 28-1 ¶¶ 25–26, 32–33; ECF No. 25-5 at 3–4).

Plaintiffs identify no affirmative act of concealment. The Foreclosure Action was based on Plaintiffs' default on the outstanding loan debt—a debt that, as discussed above, exceeded the Insurance Proceeds at all relevant times. Prosecuting a foreclosure on an outstanding debt is not a misrepresentation about the status of separately held insurance proceeds. *See Poulard v. Guy-Max Delphin, Delphin Invs., LLC*, No. 23 Civ.

18

791 (ER), 2024 WL 4504518, at *1 (S.D.N.Y. Oct. 16, 2024), *aff'd sub nom. Poulard v. Delphin*, No. 24-3015, 2025 WL 1417664 (2d Cir. May 16, 2025).

Accordingly, all three claims—breach of contract, conversion, and unjust enrichment—are time-barred under any accrual theory, and Defendant is entitled to summary judgment on this independent and alternative basis.

## II. The Fraudulent Concealment Claim is Deficient as a Matter of Law

The undisputed record establishes the following facts relevant to this claim. Between 2012 and 2016, Capital One communicated with Plaintiffs regarding the Insurance Proceeds, including the amount received, the disbursements made, and the remaining balance. (ECF No. 28-1 ¶¶ 25–26, 32–33; ECF No. 25-6 ¶ 2). On September 6, 2013, Capital One sent Plaintiffs a letter advising that it was holding "$36,561.75 in a restricted escrow account" and listing options for handling the funds. (ECF No. 28-1 ¶¶ 32–33). The mortgage assignments at issue were publicly recorded. (ECF No. 25-6 ¶ 6; ECF No. 28-1 ¶¶ 45–46). The mortgagor-mortgagee relationship between Plaintiffs and Capital One is undisputed; no fiduciary or confidential relationship has been established on this record. Plaintiffs have not identified any specific misrepresentation or omission by Capital One, nor any facts giving rise to an inference of scienter.

To prevail on a claim for fraudulent concealment under New York law, a plaintiff must establish "a duty to disclose material information, failure to fulfill the duty, scienter, reliance, and damages." *P.T. Bank Cent. Asia v. ABN AMRO Bank N.V.*, 301 A.D.2d 373, 376 (1st Dep't 2003). Moreover, Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances

19

constituting fraud or mistake." Fed. R. Civ. P. 9(b). A complaint alleging fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

Here, Plaintiffs have not identified any specific misrepresentation or omission by Capital One, and the summary judgment record contains no evidence of when or how any concealment occurred or facts giving rise to an inference of scienter. Instead, the undisputed record shows that Capital One communicated with Plaintiffs about the insurance proceeds between 2012 and 2016 (ECF No. 28-1 ¶¶ 25–26, 32–33), and Plaintiffs knew the amount received, the disbursements made, and the remaining balance (ECF No. 25-6 ¶ 2; ECF No. 28-1 ¶¶ 25–26, 32–33). Without evidence of a material misrepresentation, knowledge of its falsity, or intent to induce reliance, the fraudulent concealment claim cannot survive summary judgment. *See Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009) (requiring "a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages"); *see also Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006) ("[A] party will not be heard to complain that it has been defrauded when it is evident that its own lack of due care was responsible for its predicament."). Plaintiffs have not produced any evidence of affirmative misrepresentation or active concealment—only that Capital One failed to disclose the disposition of the proceeds. But mere silence or failure to disclose does not constitute fraud actionable under New York law absent a fiduciary or

20

confidential relationship giving rise to a duty to disclose. *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 179 (2011). Plaintiffs have not established, nor could they, that the mortgagor-mortgagee relationship between them and Capital One gave rise to such a duty. "[T]he relationship between mortgagor and mortgagee is generally not of a fiduciary character and neither is a trustee for the other." *Gonzalez v. United States*, No. 13-CV-650 (CSH), 2014 WL 3738179, at *5 (D. Conn. July 29, 2014).

Moreover, even setting aside the evidentiary deficiencies, the fraudulent concealment claim fails as a matter of law because the record does not establish a duty to disclose. "[I]t is 'well settled under New York law that a lender is not in a fiduciary relationship with a borrower, and thus a lender does not owe a borrower any special duties.'" *Miyamoto v. Bank of Am., N.A.*, No. 19-CV-445 (FB)(ST), 2020 WL 5577730, at *3 (E.D.N.Y. Sept. 17, 2020) (quoting *Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 236 (E.D.N.Y. 2013)); *see also Bell v. Deutsche Bank*, No. 18-CV-1593, 2019 WL 4917901, at *7 (E.D.N.Y. Sept. 30, 2019) ("Moreover, Deutsche Bank, as a mortgage servicer, owes no duty of care to plaintiffs, the borrowers." (collecting cases)). Mere silence or nondisclosure, without more, does not constitute fraud. *Manley v. AmBase Corp.,* 126 F. Supp. 2d 743, 755 (S.D.N.Y. 2001); *P.T. Bank Cent. Asia v. ABN AMRO Bank N.V.*, 301 A.D.2d 373, 378 (1st Dep't 2003) (no duty to disclose absent fiduciary or confidential relationship). Similarly, where the information is publicly available through recorded instruments, there can be no concealment. *See Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 179 (2011) (fraudulent concealment requires showing that defendant had "a duty to disclose material information" and "failed to do so"). The

21

mortgage assignments here were publicly recorded (ECF No. 25-6 ¶ 6; ECF No. 28-1 ¶¶ 45–46), and Plaintiffs have identified no fiduciary or confidential relationship imposing a duty on Capital One to affirmatively notify them of the assignments beyond what was required by statute.

Nor does the "special facts" doctrine supply the missing duty to disclose. Under New York law, a party with superior knowledge may have a duty to disclose material facts where the information is not readily available to the other party. *See Jana L. v. West 129th St. Realty Corp.*, 22 A.D.3d 274, 278 (1st Dep't 2005). But here, Capital One's September 2013 letter affirmatively communicated to Plaintiffs the amount held in escrow and the options for its disposition (ECF No. 28-1 ¶¶ 32–33), and the mortgage assignments were publicly recorded instruments available to Plaintiffs through a title search. Capital One's control of the escrow account does not transform the arm's-length mortgagor-mortgagee relationship into one giving rise to a special duty of disclosure where, as here, the material facts were communicated to Plaintiffs or were publicly available. *See Basis Yield Alpha Fund (Master) v. Goldman Sachs Grp., Inc.*, 115 A.D.3d 128, 137 (1st Dep't 2014) (special facts doctrine inapplicable in arm's-length transaction where facts were available through reasonable diligence).

Accordingly, Defendant is entitled to summary judgment on the fraudulent concealment claim.

III.     Plaintiffs Cannot Prevail on the Truth in Lending Act Claim

The undisputed record establishes that Capital One assigned the mortgage to Wilmington Savings Fund Society, FSB, as Trustee of Stanwich Mortgage Loan Trust A,

in late December 2018. (ECF No. 25-6 ¶ 6; ECF No. 28-1 ¶ 45). The assignment was publicly recorded on July 7, 2021. (ECF No. 28-1 ¶ 45). Capital One was the assignor— the outgoing creditor—not the new owner or assignee of the debt. (ECF No. 25-6 ¶ 6; ECF No. 28-1 ¶ 45). It is undisputed that Capital One did not notify Plaintiffs of the assignment.

Section 1641(g) of TILA provides that "not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer." 15 U.S.C. § 1641(g)(1) (emphasis added). By its plain language, the notification obligation runs to "the creditor that is the new owner or assignee of the debt"— not to the original creditor or the party assigning the mortgage. *See In re Ditech Holding Corp.*, No. 25 Civ 2064 (GHW), 2025 WL 3168074, at *5 (S.D.N.Y. Nov. 11, 2025) ("The statute by its terms imposes notice obligations on the new owner or assignee."); *Sage v. HSBC Bank USA, N.A.*, No. 118-CV-1494 (GTS)(DJS), 2019 WL 4015627, at *4 (N.D.N.Y. Aug. 26, 2019) ("[T]he notice requirement is applicable only where the mortgage loan has been assigned to a 'new creditor.'"). TILA imposes a one-year statute of limitations on private actions for damages arising from disclosure violations. 15 U.S.C. § 1640(e); *see Tasaka v. Bayview Loan Servicing, LLC*, No. 17-CV-7235 (LDH)(ST), 2022 WL 992472, at *9 (E.D.N.Y. Mar. 31, 2022). In the case of a section 1641(g) violation, "the statute of limitations begins to run 30 days after the assignment of the mortgage." *Id.*; *see also Est. of Izzo v. Vanguard Funding, LLC*, No. 15-CV-7084 (ADS)(GRB), 2017 WL 1194464, at *14 (E.D.N.Y. Mar. 30, 2017).

Additionally, TILA provides that "[a] servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation." 15 U.S.C. § 1641(f)(1); *see In re Residential Capital, LLC*, 501 B.R. 531, 546 (Bankr. S.D.N.Y. 2013) ("Servicers are not treated as assignees for the purposes of TILA unless the servicer is or was the owner of the . . . obligation.").

Plaintiffs' TILA claim fails as a matter of law for two independent reasons.

First, section 1641(g) does not impose a notification obligation on the outgoing creditor or assignor; it requires notification from "the creditor that is the new owner or assignee of the debt." 15 U.S.C. § 1641(g)(1). Here, Capital One was the party that assigned the mortgage—i.e., the outgoing creditor—not the new owner or assignee. (ECF No. 25-6 ¶ 6; ECF No. 28-1 ¶ 45). The notification obligation, if any, fell upon the assignee, Wilmington Savings Fund Society, FSB. Capital One had no statutory duty under section 1641(g) to notify Plaintiffs of its own assignment. *See In re Ditech Holding Corp.*, 2025 WL 3168074, at *5 ("The statute by its terms imposes notice obligations on the new owner or assignee . . . . Thus, even crediting [the plaintiff's] allegation that [the assignor] remained the owner of the loan, the [court] correctly concluded that this fact did not give rise to a claim . . . against any [assignor]."). Indeed, Plaintiffs themselves acknowledge that section 1641(g) "typically . . . places disclosure obligations on the new creditor." (ECF No. 10 at 10).

Second, even assuming section 1641(g) imposed a notification obligation on Capital One, Plaintiffs' claim is time-barred. TILA provides a one-year statute of limitations

24

for private actions for damages. 15 U.S.C. § 1640(e). A section 1641(g) claim accrues thirty days after the assignment. *Tasaka*, 2022 WL 992472, at *9; *see also Lau v. Specialized Loan Servicing, LLC*, No. 23 Civ. 1385 (JPC) (GWG), 2024 WL 3219810, at *8 (S.D.N.Y. June 28, 2024) (explaining that a TILA notice claim "must be brought within one year and thirty days from the transfer of the mortgage loan"). The publicly recorded assignment reflects that Capital One assigned the mortgage in late December 2018. (ECF No. 25-6 ¶ 6 (December 28, 2018); ECF No. 28-1 ¶ 45 (December 26, 2018)). The one-year limitations period therefore expired no later than late January 2020. Plaintiffs did not file this action until October 2024—more than four years after the statute of limitations expired. *See Feliciano v. U.S. Bank Nat'l Ass'n*, No. 13 Civ. 5555 (KBF), 2014 WL 2945798, at *7 (S.D.N.Y. June 27, 2014) (dismissing TILA claim as "untimely by more than three years"); *Alexander v. Nationstar Mortg., LLC*, No. 16 Civ. 2607 (LTS)(JLC), 2017 WL 6568057, at *4 (S.D.N.Y. Dec. 22, 2017) ("Plaintiffs' claims are time barred on their face.")

Plaintiffs' argument that equitable tolling should apply because they "had no knowledge of the mortgage's assignment until the abrupt foreclosure discontinuance" in 2024 is unavailing. (ECF No. 10 at 11). The assignment from Capital One to Wilmington Savings Fund Society, FSB was publicly recorded. (ECF No. 25-6 ¶ 6; ECF No. 28-1 ¶¶ 45–46). Under New York law, "[t]he recording of an instrument in the proper office is constructive notice of its contents to subsequent purchasers and mortgagees." *Andy Assocs., Inc. v. Bankers Trust Co.*, 49 N.Y.2d 13, 20 (1979). Plaintiffs had constructive notice of the assignment from the date it was recorded. Their subjective unawareness of

25

a publicly recorded document does not warrant equitable tolling. *See Est. of Izzo*, 2017 WL 1194464, at *14 (dismissing TILA claim where "the applicable limitations period expired one year" after the publicly recorded assignment).

Accordingly, Defendant is entitled to summary judgment on Plaintiffs' TILA claim.

IV.     The Quiet Title Claim Fails for Lack of an Adverse Interest

It is undisputed that Capital One assigned the mortgage to Wilmington Savings in late December 2018—more than five years before this action was commenced. (ECF No. 25-6 ¶ 6; ECF No. 28-1 ¶¶ 45–46). Capital One is not the current holder of the mortgage. (ECF No. 25-6 ¶ 6; ECF No. 28-1 ¶¶ 45–46). An additional assignment dated April 5, 2021 was recorded on July 16, 2021. (ECF No. 25-6 ¶ 6; ECF No. 28-1 ¶¶ 45–46). A satisfaction of mortgage is dated July 28, 2025 and was recorded on August 8, 2025. (ECF No. 28-1 ¶ 48).

Under Article 15 of the RPAPL, "any person having an estate or interest in the real property" may maintain an action "to compel the determination of any claim adverse to that of the plaintiff which the defendant makes." N.Y. RPAPL § 1501(1). To prevail on a quiet title claim under Article 15, a plaintiff must establish: "(i) the nature of the plaintiff's interest in the real property and the source of this interest; (ii) that the defendant claims or appears to claim an interest in the property adverse to the plaintiff's interest, and the nature of the defendant's interest; (iii) whether any defendant is known or unknown and whether any defendant is incompetent; and (iv) whether all interested parties are named and whether the judgment will or might affect other persons not ascertained at the commencement of the action." *Riley v. Rivers*, No. 15-CV-5022 (DLI), 2016 WL

26

11263672, at *5 (E.D.N.Y. Sept. 19, 2016) (quoting *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 419 (S.D.N.Y. 2010)).

Critically, a quiet title action under RPAPL section 1501 requires that the defendant "claim[ ] or appear[ ] to claim an interest in the property adverse to" the plaintiff's interest. Where a defendant has assigned its mortgage interest to a third party and disclaims any current interest in the subject property, there is no adverse claim to adjudicate, and the quiet title action must be dismissed. *See Gokhvat Holdings LLC v. U.S. Bank Nat'l Ass'n*, No. 23-300, 2024 WL 677078, at *1 (2d Cir. 2024) (dismissing quiet title appeal as moot where defendant "no longer ha[d] any interest in the property or the mortgage" and plaintiff's "complaint thus [sought] the cancellation of an interest that no longer exist[ed]"); *Riley*, 2016 WL 11263672, at *6 (granting motion to dismiss quiet title claim with prejudice because "following an assignment to Chase Bank, MERS no longer ha[d] an existing interest in the mortgage on the subject property"); *In re Stephens*, No. 21-42857, 2024 WL 74897, at *5 (Bankr. E.D.N.Y. Jan. 5, 2024) (dismissing quiet title claim because "Plaintiff does not allege the [assignor] Defendants have a claim or interest in the Residence that is adverse to the Plaintiff" where defendants "assigned any interest they had in the Residence to the [assignee] Defendants"). As the Second Circuit has explained, where a former mortgagee no longer holds an interest in the mortgage or the property, "[a]ny action to quiet title with respect to the mortgage must now be brought against the current holder of any alleged interest." *Gokhvat Holdings*, 2024 WL 677078, at *2. Similarly, "under New York state law, a party must have an interest in the property

27

to maintain a quiet title action." *Fed. Nat'l Mortg. Ass'n v. I.R.S.*, No. 98-CV-5174 (JM), 2001 WL 260076, at *1 (E.D.N.Y. Jan. 17, 2001).

Here, it is undisputed that Capital One assigned the mortgage to Wilmington Savings in December 2018—more than five years before this action was commenced. (ECF No. 25-6 ¶ 6; ECF No. 28-1 ¶ 45). Thus, Capital One is not the current holder of the mortgage. Under these circumstances, Capital One does not "claim[ ] or appear[ ] to claim an interest in the property adverse to" Plaintiffs' interest, and there is no adverse claim for this Court to adjudicate. N.Y. RPAPL § 1501(1).

The facts of this case are similar to *Gokhvat Holdings*, where the Second Circuit dismissed a quiet title action as moot because the defendant bank "no longer ha[d] any interest in the property or the mortgage" and the plaintiff's "complaint thus [sought] the cancellation of an interest that no longer exist[ed]." 2024 WL 677078, at *1. So too here: Plaintiffs seek to cancel a mortgage lien that Capital One no longer holds. As in *Gokhvat Holdings*, any action to quiet title with respect to the mortgage "must now be brought against the current holder of any alleged interest"—not Capital One. *Id.* at *2; *see also Riley*, 2016 WL 11263672, at *6 (dismissing quiet title claim with prejudice against MERS where mortgage had been assigned to Chase Bank and "MERS no longer ha[d] an existing interest in the mortgage on the subject property").

The Court notes that the satisfaction of mortgage was not recorded until August 8, 2025—nearly a year after Plaintiffs commenced this action in October 2024. (ECF No. 28-1 ¶ 48). While the mortgage lien was still a matter of public record at the time of filing, this does not alter the analysis. The quiet title claim fails not because the lien has been

28

satisfied, but because Capital One had already assigned its interest in the Mortgage in December 2018 and is not the proper defendant. Any claim to clear the title must be directed at the current holder of the mortgage interest, not at a former holder that has long since disclaimed any interest in the Property.

Accordingly, Defendant is entitled to summary judgment on the quiet title claim.

V.        The Declaratory Judgment Claim Presents No Justiciable Controversy

The undisputed facts relevant to this claim are the same as those set forth in Part IV. Capital One assigned the mortgage in December 2018, expressly disclaims any current interest in the mortgage or the Property, and is not the current holder of the mortgage. (ECF No. 25-6 ¶ 6; ECF No. 28-1 ¶ 45; ECF No. 9 at 14).

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). "The phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). A declaratory judgment is appropriate only where "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Courts in this Circuit have consistently dismissed declaratory judgment claims that are duplicative of or ancillary to underlying substantive claims. *See Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997) ("[A] court should not entertain a

29

declaratory judgment action where a more appropriate remedy already exists."). Where a declaratory judgment claim is premised on the same factual and legal theories as an underlying substantive claim that has been dismissed, the declaratory judgment claim necessarily fails as well. *See Guerrero v. Ellusionist.com, Inc.*, No. 22 Civ. 2465 (ER), 2023 WL 3847402, at *4 (S.D.N.Y. June 6, 2023) (dismissing declaratory judgment claim as redundant where it "is essentially a reiteration of the same allegations" as the underlying substantive counts). Furthermore, where the defendant against whom declaratory relief is sought no longer holds any interest in the property or mortgage at issue, there is no "substantial controversy" between the parties and no basis for declaratory relief. *See Gokhvat Holdings*, 2024 WL 677078, at *1–2 (dismissing as moot where defendant no longer had any interest in the property or mortgage).

As discussed above, Capital One assigned the mortgage to Wilmington Savings in December 2018 and expressly disclaims any current interest in the Mortgage or the Subject Property. (ECF No. 25-6 ¶ 6; ECF No. 28-1 ¶¶ 45–46). Where the named defendant has no interest in the mortgage at issue, there is no "substantial controversy, between parties having adverse legal interests," warranting declaratory relief. *MedImmune*, 549 U.S. at 127.

Accordingly, Defendant is entitled to summary judgment on the declaratory judgment claim.

## **CONCLUSION**

For the foregoing reasons, Defendant's cross-motion for summary judgment is granted as to all claims. Plaintiffs' motion for summary judgment is denied. Defendant's

30

motion to dismiss (ECF No. 9) is denied as moot.[3] The Clerk of Court is respectfully directed to enter judgment in favor Defendant's favor and close the case.

SO ORDERED.

/s/ RAMÓN E. REYES, JR.

RAMÓN E. REYES, JR.
United States District Judge

Dated: March 31, 2026
        Brooklyn, New York

---

[3] In their opposition to the motion to dismiss, Plaintiffs requested, in the alternative, "leave to amend the amended complaint to the extent the Court finds any claim insufficiently pleaded." (ECF No. 10 at 10). The Court has considered this request but concludes that leave to amend would be futile. Because the deficiencies in Plaintiffs' claims are substantive—arising from the undisputed record, the statute of limitations, and the absence of evidence—rather than pleading deficiencies, leave to amend would be futile. The TILA claim fails because the statute imposes no obligation on the outgoing creditor (a statutory deficiency not curable by repleading); the quiet title and declaratory judgment claims fail because Capital One holds no adverse interest (a factual reality that cannot be amended away); the breach of contract, conversion, and unjust enrichment claims are independently time-barred; and the fraudulent concealment claim lacks the requisite duty to disclose. No amendment to the pleadings could cure these deficiencies. See *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (leave to amend properly denied where amendment would be futile).

31